**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Richard and Kristin Zabriskie, | No. CV-13-02260-PHX-SRB |
| Plaintiffs, | **ORDER** |
| v. | |
| Federal National Mortgage Association, et al., | |
| Defendants. | |

The Court now considers Defendant Federal National Mortgage Association's ("Fannie Mae") Motion for Summary Judgment ("Def.'s MSJ") (Doc. 101)[1] and Plaintiffs Richard and Kristin Zabriskie's Motion for Partial Summary Judgment ("Pls.' MPSJ") (Docs. 104 (redacted public version) and 106 (sealed)). The Court heard oral argument on these Motions on January 4, 2016. (Doc. 134, Minute Entry.)

## I.    BACKGROUND

Plaintiffs have brought this lawsuit against Fannie Mae for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, which arose out of Plaintiffs' attempts to refinance their home in 2012. Fannie Mae is a government-sponsored entity created to help stabilize the market for residential mortgages. (Doc. 102,

---

[1] In deciding Fannie Mae's Motion, the Court has not considered its "Reply in Support of Fannie Mae's Statement of Facts and Fannie Mae's Responses to Plaintiffs' Contravening Statement of Facts and Plaintiffs' Supplemental Statement of Facts" (Doc. 126) because the Local Rules do not permit such a filing. *See* LRCiv 56.1 & 12(m)(2) ("Any response to an objection [in an opposing party's controverting statement of facts] must be included in the responding party's reply memorandum for the underlying motion and may not be presented in a separate responsive memorandum.").

Def.'s Statement of Undisputed Facts in Supp. of MSJ ("DSOF") ¶ 1; Doc. 123, Pls.' Sealed Contravening Statement of Facts and Supplemental Statement of Facts in Opp'n to MSJ ("PCSOF") ¶ 1.) Fannie Mae functions primarily as a secondary purchaser of residential mortgages, thereby increasing liquidity for the primary mortgage lenders. (DSOF ¶¶ 2-4; PCSOF ¶¶ 2-4.) To help lenders identify the loans Fannie Mae will agree to purchase, it has developed a set of guidelines and requirements to govern whether it will buy a particular loan. (DSOF ¶ 8; PCSOF ¶ 8.) These guidelines are compiled in a publicly available, 1,300-page document known as "The Selling Guide." (DSOF ¶ 9; PCSOF ¶ 9.) It is possible for lenders to manually underwrite loans by evaluating loan applications against the requirements of the Selling Guide. (DSOF ¶ 11; PCSOF ¶ 11.) To make it easier for lenders to determine whether Fannie Mae will purchase a loan, Fannie Mae has also created an automatic underwriting system called "Desktop Underwriter" ("DU") that it licenses to lenders. (DSOF ¶ 14; PCSOF ¶ 14.) When a borrower applies for a mortgage, a lender obtains personal and financial information about the borrower through a loan application form and enters this information into DU. (DSOF ¶¶ 16, 26; PCSOF ¶¶ 16, 26.) DU processes both this information and credit data on the prospective borrower obtained from the three major credit repositories (TransUnion, Equifax, and Experian). (DSOF ¶¶ 28, 31; PCSOF ¶¶ 28, 31.)[2] The credit data have been merged into a single report (a "tri-merge report"), which includes, among other information, a field stating the Manner of Payment ("MOP") Code, which is a rating system established by the credit reporting industry that identifies whether an account is current or past due. (DSOF ¶ 46; PCSOF ¶ 46.) DU identifies a MOP Code of "8" or "9" as a "foreclosure." (DSOF ¶ 47; PCSOF ¶ 47.) After DU processes the borrower's loan application information and the credit data from the tri-merge report, it issues a "DU Findings" report that indicates, among other things, whether a prospective

---

[2] The parties dispute whether the borrower's credit data is assembled by the lender or by Fannie Mae. (*See* DSOF ¶¶ 28-29; PCSOF ¶¶ 28-29.) Because the Court concludes that Fannie Mae evaluates consumer credit information when it licenses its DU software, it does not address whether Fannie Mae also assembles consumer credit information.

loan will be eligible for purchase by Fannie Mae. (DSOF ¶ 17; PCSOF ¶ 17.) An "Approve/Eligible" recommendation indicates that Fannie Mae will purchase the loan. (*See* DSOF ¶ 18; PCSOF ¶ 18.) A "Refer with Caution" recommendation indicates that Fannie Mae will not purchase the loan using only DU, but it may buy the loan if the lender chooses to manually underwrite to loan. (*See* DSOF ¶ 19; PCSOF ¶ 19.)

Plaintiffs worked with multiple lenders from late 2012 through summer 2013 in an effort to refinance their mortgage. (DSOF ¶ 50; PCSOF ¶ 50.) During this time Plaintiffs obtained eight DU Findings, five of which resulted in an "Approve/Eligible" recommendation and three resulted in a "Refer with Caution" recommendation. (DSOF ¶ 50; PCSOF ¶ 50.) In each of the DU Findings that generated a "Refer with Caution" recommendation, DU identified the presence of a foreclosure on Plaintiffs' tri-merge report because it included one or more mortgage tradelines reported with a MOP Code of 9. (DSOF ¶ 52; PCSOF ¶ 52.) Plaintiffs have submitted evidence that a MOP Code of 9 on a credit report does not necessarily mean that there had been a foreclosure. (*See* Doc. 149, Pls.' Sealed Statement of Undisputed Facts in Supp. of MPSJ ("PSOF") ¶¶ 42-44, 50; Doc. 107-15, Sealed Ex. 14, Dep. of Mary Methvin 55:8-9, 89:16-19; Doc. 103-3, Sealed Ex. A8, Credco Credit Report at FM000074.) Plaintiffs specifically allege, and Fannie Mae does not dispute, that the DU Findings that identified a previous foreclosure on their tri-merge report were inaccurate because Plaintiffs' previous home had not been foreclosed, but was sold through a short sale. (Doc. 1, Compl. ¶¶ 18, 42, 47, 50, 53.) Plaintiffs argue that the incorrect DU Findings establish that Fannie Mae, through its DU software, violated the FCRA because Fannie Mae "failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared . . . concerning Plaintiffs." (*Id.* ¶ 99); *see* 15 U.S.C. § 1681e(b).

The parties each move for summary judgment on the issue of whether Fannie Mae is a "consumer reporting agency" under the FCRA when it licenses its DU software to lenders. (Def.'s MSJ at 11-20; Pls.' MPSJ at 2-6.) Fannie Mae also moves for summary judgment arguing that, even if it is a "consumer reporting agency" under the FCRA when

1    it licenses its DU software, Plaintiffs have not been injured by an FCRA violation.

2    (Def.'s MSJ at 20-22.)

3    **II.    LEGAL STANDARDS AND ANALYSIS**

4          Under Federal Rule of Civil Procedure 56, summary judgment is properly granted

5    when: (1) there is no genuine dispute as to any material fact; and (2) after viewing the

6    evidence most favorably to the non-moving party, the movant is clearly entitled to prevail

7    as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

8    (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). A fact is

9    "material" when, under the governing substantive law, it could affect the outcome of the

10   case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of

11   material fact arises if "the evidence is such that a reasonable jury could return a verdict

12   for the nonmoving party." *Id.* In considering a motion for summary judgment, the court

13   must regard as true the non-moving party's evidence if it is supported by affidavits or

14   other evidentiary material, and "all inferences are to be drawn in the light most favorable

15   to the non-moving party." *Eisenberg*, 815 F.2d at 1289; *see also Celotex*, 477 U.S. at 324.

16   The non-moving party may not merely rest on its pleadings; it must produce some

17   significant probative evidence tending to contradict the moving party's allegations,

18   thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that

19   the plaintiff must present affirmative evidence to defeat a properly supported motion for

20   summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289

21   (1968).

22          **A.    Consumer Reporting Agency**

23          The parties each move for summary judgment on the issue of whether Fannie Mae

24   is a consumer reporting agency under the FCRA when it licenses its DU software to

25   lenders. (Def.'s MSJ at 11-20; Pls.' MPSJ at 2-6); *see* 15 U.S.C. § 1681e (stating that the

26   reporting accuracy provision of the FCRA applies only to "consumer reporting

27   agencies"). The Court has previously stated that the statutory definition of a consumer

28   reporting agency includes five elements:

(1) the company must be paid for its work or be working on a "cooperative nonprofit basis," (2) it must be in the business of (that is to say, "regularly") (3) "assembling or evaluating consumer credit information or other information on consumers" (4) "for the purpose of furnishing consumer reports to third parties," and (5) must use interstate commerce to achieve these aims.

(Doc. 34, Apr. 17, 2014 Order at 7 (quoting 15 U.S.C. § 1681a(f)).) The parties only dispute the third and fourth elements—whether Fannie Mae "assembl[es] or evaulat[es] consumer credit information" when it licenses its DU software and, if so, whether it does so "for the purpose of furnishing consumer reports to third parties." (*See* Def.'s MSJ at 11-12.)

## 1.      Assembles or Evaluates Consumer Credit Information[3]

Plaintiffs argue that Fannie Mae, through its DU software, "evaluat[es] consumer credit information" through a two-step analysis of the borrower's loan application and credit report data (the "Credit Risk Assessment"). (Pls.' MPSJ at 3.) Plaintiffs have provided evidence demonstrating that DU's Credit Risk Assessment takes into account a factor called the "Fannie Mae Credit Assessment" ("FMCA"), which Plaintiffs describe as "a proprietary Fannie Mae-created algorithm that 'empirically summarize[s] borrower credit bureau data into a single measurement of creditworthiness.'" (PSOF ¶¶ 26-30 (describing the steps that DU implements to calculate an FMCA value).) Plaintiffs have also submitted evidence demonstrating that in the second step of the Credit Risk Assessment, the DU software evaluates several non-credit related factors from the loan application and will calculate a "DU Score," which determines whether the DU software will generate an "Approve/Eligible" or "Refer with Caution" recommendation. (*Id.* ¶¶ 31-32.) Before the recommendation is generated, however, the DU software will first determine if there are any "overrides" that "exist that can 'trump' Fannie Mae's initial risk evaluation." (*Id.* ¶ 33.) As relevant to this case, one such override includes the

---

[3] Because the Court concludes that Fannie Mae evaluates consumer information through its DU software that it licenses to lenders, the Court does not address whether Fannie Mae also "assembl[es] . . . consumer credit information." *See* 15 U.S.C. § 1681a(f).

1   detection of a MOP Code of 8 or 9. Plaintiffs have submitted evidence demonstrating that

2   the DU software will expressly report a "foreclosure" if it detects a MOP Code of 8 or 9,

3   yet a MOP Code of 8 or 9 does not necessarily indicate that the account had been in

4   foreclosure. (*Id.* ¶¶ 34-35, 40-60.)

5            Fannie Mae does not dispute that the DU software evaluates a borrower's loan

6   application information and credit data by functioning as Plaintiffs have described above.

7   (*See* Doc. 121, Def.'s Opp'n to PSOF ("DCSOF") ¶¶ 26-34.) Fannie Mae instead argues

8   that because the evaluation of consumer credit information occurs within the DU system,

9   it is the lender to which the software is licensed, not Fannie Mae, who actually evaluates

10  the consumer information. (Def.'s MSJ at 12-16; Doc. 120, Def.'s Sealed Resp. to Pls.'

11  MPSJ ("Def.'s Resp.") at 9-14.) The Court previously rejected this argument when it was

12  raised in Fannie Mae's Motion to Dismiss and Fannie Mae, without resorting to any

13  additional persuasive evidence, now requests that the Court reconsider its prior

14  conclusion. (*See* Doc. 13, Mot. to Dismiss at 9-13; Apr. 17, 2014 Order at 7-8.) In light of

15  the undisputed evidence in the record, however, the Court concludes that Fannie Mae

16  evaluates a borrower's credit information by licensing its DU software. It is undisputed

17  that Fannie Mae created the computer code that comprises the DU software application

18  and that DU uses Fannie Mae's proprietary algorithms to evaluate the borrower's

19  information and determine whether Fannie Mae will likely purchase the loan. There is no

20  evidence in the record that the lender plays any significant role in evaluating the

21  borrower's information or generating the results from the DU software, beyond inputting

22  the borrower's personal and credit information into the software. The record also does not

23  support Fannie Mae's argument that the DU software is "essentially an electronic version

24  of the Selling Guide" and therefore functions as an automated version of a lender's

25  manual underwriting of a particular loan. (*See* Def.'s MSJ at 16; Def.'s Resp. at 13.)

26  Although the Selling Guide directs the lender to consider certain factors in manually

27  underwriting a loan application, it does not specifically direct how these factors should be

28  weighed or considered. (*See* Doc. 123-5, Sealed Ex. 5, Selling Guide at 288-90.) The DU

software, however, uses Fannie Mae's proprietary formulas to automatically weigh a consumer's information and generate a FMCA and DU Score. (*See id.* at 290; PSOF ¶¶ 26-34 (undisputed description of DU's Credit Risk Assessment).) Because DU uses Fannie Mae's proprietary algorithms to generate the information in the DU Findings report, including its ultimate recommendation, the Court cannot conclude that a lender is capable of replicating the results of DU Findings by manually underwriting the same loan application using the Selling Guide. Based on the undisputed evidence in the record, the Court concludes that Fannie Mae evaluates consumer information when it licenses its DU software to lenders.

## 2. For the Purpose of Furnishing Consumer Reports to Third Parties

The parties also dispute whether Fannie Mae evaluates consumer credit information "for the purpose of furnishing consumer reports to third parties." *See* 15 U.S.C. § 1681a(d)(1) (defining "consumer report" as any "communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, [or] credit capacity . . . which is used or expected to be used . . . for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit or insurance to be used primarily for personal, family, or household purposes . . . [or] any other purpose authorized under [15 U.S.C. § 1681b]"). Fannie Mae argues that this element is not met because DU Findings are generated "for the purpose of indicating whether Fannie Mae would enter into a transaction with the lender to buy the loan from the lender if the lender later delivers the loan to Fannie Mae." (Def.'s MSJ at 17.) The Court rejects this argument because it has already concluded in a previous Order that "[t]he fact that DU Findings are couched in terms of an analysis of whether Fannie Mae would purchase a given loan and not a directive to the lender is irrelevant." (Apr. 17, 2014 Order at 7 n.5.) Fannie Mae has offered no additional evidence or persuasive argument that compels the Court to reconsider this finding. S*ee PDK Laboratories, Inc. v. Ashcroft*, 338 F. Supp. 2d 1, 7 (D.D.C. 2004) (stating that when a motion for summary

judgment raises the legal arguments that a court has already considered and rejected in a previous motion to dismiss, it may be subject to denial under the law of the case doctrine).[4] Fannie Mae also argues that it could not have furnished credit reports to third parties "because it had no credit report information to provide to lenders that the lenders had not already obtained from others and provided first to Fannie Mae itself." (Def.'s MSJ at 18.) The undisputed evidence in the record demonstrates, however, that the DU Findings at issue in this case communicated information concerning Plaintiffs' credit history (the presence of a foreclosure) to third parties (i.e., lenders at Nations Choice, Amerisave, and First International Bank & Trust) that did not appear on either Plaintiffs' loan application or their tri-merge credit report. The Court therefore concludes that the evidence in the record demonstrates that a DU Findings report constitutes a "consumer report" under the FCRA and was generated for the purpose of communicating Plaintiffs' credit report information to third parties.

Because the undisputed evidence in the record demonstrates that Fannie Mae evaluates consumer information for the purpose of furnishing a consumer report to third parties, the Court finds that Fannie Mae acts as a "consumer reporting agency" as the term is defined in the FCRA when it licenses its DU software. The Court therefore grants Plaintiffs' Motion for Partial Summary Judgment and denies Fannie Mae's Motion for Summary Judgment on this issue.

## B.    Injury Caused by an FCRA Violation

Fannie Mae also argues that it is entitled to summary judgment because, even if it is a consumer reporting agency under the FCRA when it licenses its DU software to lenders, Plaintiffs "have not been injured by any FCRA violation." (Def.'s MSJ at 20-22.)

---

[4] The Court does not find the Federal Trade Commission's *40 Years of Experience with the Fair Credit Reporting Act* instructive in this case because, as Fannie Mae notes, the quoted excerpt concerns whether a lender is a consumer reporting agency when it communicates a loan applicant's consumer report information to a loan insurer or guarantor, such as Fannie Mae. (*See* Def.'s MSJ at 17.) The issue in this case, however, is whether Fannie Mae furnishes a consumer report to third parties when it communicates information about a loan applicant's credit history to a lender that did not originate with either the loan applicant or the tri-merge credit report.

1    Fannie Mae specifically argues that Plaintiffs are challenging Fannie Mae's credit risk

2    policy because Plaintiffs believe that Fannie Mae should have bought their loan despite

3    the fact that a MOP Code of 9 appeared on their credit reports. (*Id.*) The Court rejects this

4    argument because Fannie Mae misconstrues the basis of Plaintiffs' claim. Plaintiffs allege

5    in their Complaint that they were harmed, not because of Fannie Mae's credit risk policy,

6    but because Fannie Mae "adopted and follows an unreasonable foreclosure identification

7    procedure that, on its plain terms, knowingly misidentifies non-foreclosures as

8    foreclosures." (Compl. ¶¶ 96-101; *see also* Doc. 122, Pls.' Sealed Resp. to Def.'s MSJ at

9    10-12.) Plaintiffs specifically allege that they were unable to refinance their home

10   because Fannie Mae's DU software inaccurately identified a MOP Code of 9 on their

11   credit reports as a "foreclosure," when it in fact represented a short sale. Plaintiffs argue

12   that this constitutes a violation of the the reporting accuracy provision of the FCRA and

13   they are entitled to actual and statutory damages. Because Fannie Mae has not argued

14   Plaintiffs' evidence of actual economic and non-economic damages as a result of being

15   unable to refinance their home for an extended period of time is insufficient to survive a

16   motion for summary judgment, the Court denies Fannie Mae's Motion to the extent it

17   seeks summary judgment on Plaintiffs' claim for actual damages.

18       Fannie Mae also argues that Plaintiffs have not provided sufficient evidence to

19   establish a "willful" violation of the FCRA and, therefore, Plaintiffs are not entitled to

20   statutory damages. (Def.'s MSJ at 22); *Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 53

21   (2007). Plaintiffs do not respond to this argument and, therefore, the Court grants

22   summary judgment in favor of Fannie Mae to the extent that Plaintiffs seek to recover

23   statutory damages.  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (stating that

24   a plaintiff "abandon[s] . . . claims by not raising them in opposition to [the defendant's]

25   motion for summary judgment." (internal quotation marks omitted)).

26   **III.    CONCLUSION**

27       The undisputed evidence in the record demonstrates that Fannie Mae acts as a

28   "consumer reporting agency" when it licenses its DU software to lenders; therefore, the

Court grants Plaintiffs' Motion for Partial Summary Judgment and denies Fannie Mae's Motion for Summary Judgment on this issue. The Court also denies Fannie Mae's Motion to the extent it seeks summary judgment on the issue of whether Plaintiffs may recover actual damages, but grants the Motion to the extent it seeks summary judgment on Plaintiffs' claim for statutory damages because Plaintiffs do not dispute that the record lacks evidence of a willful violation of the FCRA.

**IT IS ORDERED** granting in part and denying in part Defendant Federal National Mortgage Association's Motion for Summary Judgment (Doc. 101).

**IT IS FURTHER ORDERED** granting Plaintiffs Richard and Kristin Zabriskie's Motion for Partial Summary Judgment (Doc. 104).

Dated this 24th day of February, 2016.

Susan R. Bolton
United States District Judge